**ENTERPRISE COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Beaumont Broadcasting Corporation, W. P. Hobby, Intervenors.**

**No. 14474.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 15, 1958.

Decided Jan. 29, 1959.

---

General Counsel, Federal Communications Commission, and Joel Rosenbloom, Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Warren E. Baker, General Counsel, Federal Communications Commission, at the time record was filed, also entered an appearance for appellee.

Mr. George S. Smith, Washington, D. C., with whom Mr. Edwin S. Nail, Washington, D. C., was on the brief, for intervenor Beaumont Broadcasting Corporation.

Mr. William C. Koplovitz, Washington, D. C., with whom Mr. William J. Dempsey, Washington, D. C., was on the brief, for intervenor W. P. Hobby.

Before BAZELON, FAHY and DANAHER, Circuit Judges.

BAZELON, Circuit Judge.

In Enterprise Company v. Federal Communications Commission, 1955, 97 U.S.App.D.C. 374, 231 F.2d 708, we held that the Commission had erroneously refused to reopen the record of a three-party comparative contest for a television station to consider the circumstances of a post-grant agreement between the grantee (Beaumont Broadcasting Corporation) and one of the unsuccessful applicants (KTRM) pursuant to which agreement the latter party was to receive a payment of money and was to drop out of the contest. We remanded the case to the Commission (1) to complete comparative consideration of the relative merits of the grantee and its one remaining competition (the Enterprise Company) in the light of the agreement; and (2) to consider, in the light of Clarksburg Publishing Co. v. Federal Communications Commission, 1955, 96 U.S.App.D.C. 211, 225 F.2d 511, the bearing of the agreement upon the Commission's processes and the public interest.

Mr. Stanley S. Neustadt, Washington, D. C., with whom Leonard H. Marks and Paul Dobin, Washington, D. C., were on the brief, for appellant.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom John L. Fitzgerald,

The case returns to us now on an appeal by the Enterprise Company (hereinafter "Enterprise") from the Commission's reaffirmance of the grant to

Beaumont Broadcasting Corporation (hereinafter "Beaumont"). The background facts are sufficiently stated in our former opinion.

■ So far as the comparative merits of Beaumont and Enterprise are concerned, the Commission concluded, on reconsideration in the light of the post-grant agreement, that Beaumont was to be preferred over Enterprise. This conclusion is vigorously challenged by Enterprise, but we cannot say that it is unsupported by substantial evidence.

■ Nor can we accept Enterprise's argument that the post-grant agreement is such an alteration of Beaumont's proposal as to disqualify the latter under the then-existing § 1.365(a) of the Commission's Rules.[1] We express no view on the Commission's contention that the rule was inapplicable to Beaumont because it was a permittee rather than an applicant. The significant question, when there has been a post-grant change in the status or the proposal of the successful party is whether the change, upon new comparison of the parties, should dictate a different result. See W. S. Butterfield Theatres, Inc. v. Federal Communications Commission, 1956, 99 U.S.App.D.C. 71, 237 F.2d 552. We directed the Commission to make such a new comparison and it has done so. We have been shown no basis to disagree with its conclusion that the change does not dictate a different result. When we have directed a new comparison, the successful party may not use a post-grant change to strengthen its position. There is no suggestion that the subsequent change in Beaumont's position was used here to strengthen its case. Obviously Beaumont's case was made weaker rather than stronger. In these circumstances, the Commission's construction of its rules as not requiring Beaumont's disqualification was reasonable.

■ We come now to the Commission's disposition of the case under the second point of our mandate—the question of the effect of the agreement upon the Commission's processes and the public interest.

In a Notice of Proposed Rule Making released on June 30, 1958,[2] the Commission stated that *any consideration* paid in connection with the dismissal of an application in a comparative proceeding or the merger of two or more applicants in such a proceeding

"may tend to defeat the purpose of hearings on applications for broadcast facilities and encourage the filing of marginal or "strike" applications in the hope that payment may be exacted in consideration of amendment or dismissal of such applications. In many instances these practices may also represent an abuse of the Commission's hearing processes."

The rule proposed is that the applications of all parties involved in such a payment should be dismissed with prejudice.

Whether a payment of merely "out-of-pocket expenses" contravenes the public interest and abuses the Commission's processes is a question we left open in Clarksburg Publishing Co. v. Federal Communications Commission, 1955, 96 U.S.App.D.C. 211, 220 note 29, 225 F.2d 511, 520 note 29. We prefer to continue to withhold any expression of views on that question, particularly in view of the pendency of the rule making proceeding. But, as we said in Clarksburg, if a payment of consideration is to be tolerated on the ground that it is only "out-of-pocket expenses," evidence proving that the payment is indeed of that nature "is indispensable to the Commission's conclusion that all is well." 96 U.S.App.D.C. at page 220, 225 F.2d at page 520. An

1. Revised and renumbered § 1.311, 47 C.F.R. § 1.311, effective Feb. 3, 1958.

2. In re Amendment of Section 1.311, 1.312, and 1.363 of the Commission's Rules,

F.C.C. Docket No. 12,509, 1 Pike & Fischer Radio Reg. 51; xiii, 23 Fed.Reg. 5094 (July 3, 1958).

assurance from the paying party, we held, is not enough. Ibid.

 In the instant case, the Commission found that the $55,000 payment made to KTRM by Beaumont with funds advanced by Hobby was KTRM's "expenses." The amount, the Commission found, was agreed upon at a meeting in Washington on December 13, 1954, at which the parties used an "itemized statement." Neither this statement nor any other itemization was placed in evidence before the Commission. The evidence we are referred to as a basis for the Commission's finding in this regard is the testimony of a representative of Beaumont and that of a representative of Hobby. The Beaumont representative testified that an itemized statement of expenses had been shown to him at the Washington meeting, but that he could not recall any of the principal items on it. The representative of Mr. Hobby, who was actually advancing the $55,000, testified that he saw an itemization at the meeting, but did not examine it, because he "did not feel it was necessary for [him] to do so." On this record we cannot hold that the showing of the nature of the consideration paid was any more substantial than the showing we held insufficient in Clarksburg. We have no recourse, therefore, but to reverse and remand the case once again to the Commission for reconsideration in the light of what we have said in Clarksburg and in this opinion.

So ordered.

DANAHER, Circuit Judge (concurring in the result).

I had set forth my views of the transaction at issue when this case was before us in 1955. See dissent in Enterprise Company v. Federal Communications Commission, 97 U.S.App.D.C. 374, 379, 231 F.2d 708, 713, certiorari denied Beaumont Broadcasting Corp. v. Enterprise Co., 1956, 351 U.S. 920, 76 S.Ct. 711, 100 L.Ed. 1451. As I read the record, the Hobby agreement may at any time be totally terminated if Hobby should demand and receive the full amount of his loan of $55,000. Moreover, as I set forth in my dissent, the agreement can never be executed unless the Commission finds that it will be in the public interest for Beaumont to assign its construction permit to a new holding company, yet to be formed, in which Beaumont would own 67½ per cent of the stock and Hobby would own 32½ per cent of the stock for which he must pay in full.

Details as to the background of that transaction were to be appraised by the Commission, as I read the terms of the majority's previous direction. The Commission was asked to consider the "changed" financial status in the light of Clarksburg Publishing Co. v. Federal Communications Commission, 1955, 96 U.S.App.D.C. 211, 225 F.2d 511. But Clarksburg had said explicitly that the extent to which the Commission may wish to require itemization of expenses and similar data "is a matter for the Commission's judgment." Id., 96 U.S. App.D.C. at page 220, 225 F.2d at page 520.

Here, it could have seemed that the Commission had exercised that judgment on the basis of the sworn testimony of record, wholly unchallenged, and Beaumont's complete disclosure of the terms of the agreement back in December 1954. However, it is clear my colleagues feel that further particulars should be developed of record, and I am not disposed to object. Thus I concur in the result.

It may be in order to observe that in my view this case does not at all resemble the Clarksburg situation. There the only other applicant "dropped out" the day before the Commission's award to Ohio Valley, and there were various other factual deficiencies. Here, however, as my colleagues recognize, the Commission has found not once but three times, after comparative hearings on the relative merits, that Beaumont is and was superior to all contesting applicants.

When the record shall have been completed, I assume dispositive finality will appear, who knows?