UNITED STATES of America,
Plaintiff,

v.

John V. O'CONNELL and Jopat Realty
Corp., Defendants.

No. 73 Civ. 68.

United States District Court,
S. D. New York.

April 9, 1973.

Whitney North Seymour, U. S. Atty.,
for the Government by Taggart D.
Adams, and Dennison Young, Jr., Asst.
U. S. Attys., of counsel.

Fred J. Bianco, Jr., Leone Pecoraro,
Peekskill, N. Y., for defendants.

OPINION

DUFFY, District Judge.

The question presented by this
case is whether the United States of
America, as fee owner of a housing
project in Peekskill, New York, has ob-
tained an easement by use or by implica-
tion over two parcels of land, one of
which is a private road immediately con-
tiguous to a parking lot owned by the
project.

By order of this Court dated March 5, 1973, the Government's motion for a preliminary injunction was consolidated, pursuant to Rule 65 of the Federal Rules of Civil Procedure, with the trial of the case. At the beginning of the trial, certain facts were stipulated by the parties and that stipulation of fact, including the metes and bounds descriptions of the various parcels, is adopted by this Court as part of this opinion.

For ease of description, parcel A refers to those parcels which were covered by the lien of the mortgage insured by the F.H.A., and includes the land upon which the apartment is built, as well as the parking lot right across the public street. Parcel B is the area immediately adjoining the parking lot and is approximately 150' x 60' in size. Parcel C is a private roadway which abuts the west side of the land upon which the apartment project is built. All three parcels of land involved in this action are located in the City of Peekskill, County of Westchester, State of New York.

Prior to 1959, parcels A, B and C were all owned by the defendant O'Connell or by his wholly owned corporation Jopat Realty Corp. In or about January 1959, O'Connell approached the F.H.A. in order to obtain insurance for a mortgage with which to build an apartment complex on parcel A. A letter of commitment, dated April 25, 1959, was issued by the F.H.A. covering the proposed apartment project.

After the letter of commitment was issued, and pursuant to the requirements of the F.H.A., the individual defendant, O'Connell, caused the formation of a separate corporation called Patricia Gardens, Inc., which was to be the sponsor of the project. Jopat Realty Corp. deeded the parcel on which the apartments were to be constructed to Patricia Gardens, Inc., and shares were issued with the common stock going to O'Connell and all of the preferred stock to the Federal Housing Administration. Apparently, certain difficulties were encountered in the construction of the project but it was completed by August 28, 1962, with certificates of occupancy being issued for all of the buildings and the mortgage endorsed for insurance by the F.H.A.

During the construction period, the parking lot portion of parcel A was added to the mortgaged land under a Spreader Agreement between the mortgagor, Patricia Gardens, Inc., and the mortgagee, The County Trust Company of White Plains, New York. After the final endorsement by the F.H.A. in 1962, the mortgage and mortgage note were assigned by The County Trust Company to the Comptroller of the State of New York. The mortgage note came into default during the period 1963–1965, and in 1965, the mortgage and note were assigned to the F.H.A. pursuant to the mortgage insurance agreement. The F.H.A. foreclosed the mortgage and the Secretary of Housing and Urban Development received parcel A at a foreclosure sale on July 1, 1968.

Since before the construction of the project up to the present time, the City of Peekskill has had in effect an ordinance which requires that apartment buildings provide one and one-half off-street parking spaces for each dwelling unit in the development. This project contains 100 units and supposedly Patricia Gardens, Inc., the sponsor thereof, should have provided 150 parking spaces. In fact, however, even with the Spreader Agreement referred to above, the "Final Rental Schedule and Information on Rental Property" filed with the F.H.A. on August 23, 1962, by Patricia Gardens, Inc. shows that the project had only 76 parking spaces. Apparently the sponsor had no difficulty with the Peekskill officials because parking was permitted on the private road adjacent to the apartment complex, which is referred to herein as parcel C, and also in the area adjacent to the parking lot, which is referred to herein as parcel B.

After the foreclosure sale, tenants of Patricia Gardens continued to park on both parcels B and C. In November 1972, after unsuccessful attempts to sell to the F.H.A. both parcels B and C, the defendant O'Connell caused steel posts to

be put along the edge of parcel B, thereby effectively foreclosing its use as a parking lot. Defendant O'Connell has also threatened to block the private road, which is known as parcel C.

The Government now brings this action to enjoin O'Connell from taking any steps which would inhibit the use of parcels B and C by the tenants of Patricia Gardens and for a declaratory judgment permitting the continued use by these tenants of these parking places because of an implied easement.

■ It is clear that the law of the State of New York is applicable. For an implied easement to be created under that law, the following elements must be present:

1) The relevant parcels of land must have once been in unitary ownership;

2) A use must have been established in which one part or parcel of the land was subordinated to another;

3) The use must be plainly and physically apparent by a reasonable inspection; and

4) The use must affect the value of the estate benefitted and it must be necessary to the reasonable use of such estate.

See Jacobson v. Luzon Lumber Company, 192 Misc. 183, 79 N.Y.S.2d 147 (1948), aff'd 276 App.Div. 787, 92 N.Y.S.2d 537, aff'd 300 N.Y. 697, 91 N.E.2d 724 (1950).

In the case at bar, it is clear that the latter two elements of the test are met. The use by tenants of the allegedly dominant parcel was admitted. The benefit to the allegedly dominant parcel is clear and the "necessity" required is not a dire need but will be met if the claimed use materially affects the value of the thing granted. Spencer v. Kilmer, 151 N.Y. 390, 398, 45 N.E. 865 (1897).

The real issue in this case is whether there was a unitary ownership of the parcels at the time that the use arose. The Government contends that this element is satisfied because the "control" of the parcels was in fact vested in one man who owned the properties, either in his individual name or through closely held corporations. To support this position the Government has referred this Court to the case of Cosmopolitan National Bank v. Chicago Title & Trust Co., 7 Ill.2d 471, 131 N.E.2d 4 (1956).

That case is clearly inapposite, since while it may state the law of the State of Illinois, it does not have any bearing whatsoever on the law of the State of New York.

In any event, the *Cosmopolitan National Bank* case, *supra,* is clearly distinguishable from the case at bar. In *Cosmopolitan National Bank,* the owners of the parcels set up different corporations to hold title because it suited their own convenience. Here the individual owner was forced to divide title to the various parcels before the use evolved to suit the convenience of the Government.

■ The Government here required the setting up of a separate "single purpose" corporation to hold title to the F.H.A. insured project,*—so that the F.H.A. could more easily control the construction and the rental of the project. The Government insisted on the separate corporate entities when it suited its convenience. Now the Government seeks to have this Court ignore the fact that title to the properties was in different corporate entities and to pierce the corporate veil solely for the convenience of the Government. By doing so, this Court would do violence unnecessarily to the corporate and real estate law of the State of New York, and for that reason I must hold that the claimed easement by implication does not exist.

■ Situations where a court is permitted to pierce the corporate veil are

---

* The Court takes judicial notice of the fact that the F.H.A. has not always adhered to this requirement. Thus *Presidential Realty Corporation* has been permitted to have title to a number of F.H.A. projects, as well as to other non-F.H.A.-insured real estate.

few in number and have been well delineated by the New York courts over the years. *Cf.* Wormser, Piercing the Veil of Corporate Entity, 12 Col.L.Rev. 496 (1912). The Court of Appeals has emphasized the general rule:

> "That even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property."
> Brock v. Poor, 216 N.Y. 387, 401, 111 N.E. 229, 234 (1915).

Thus the fact that a real estate corporation has only one controlling stockholder does not of itself provide grounds for ignoring the corporate entity. See Truman Homes v. Lane Holding Corp., 88 N.Y.S.2d 406 (Sup.Ct.1949). And the usual grounds for dispensing with the corporate form, i. e., to prevent fraud or achieve equity, are not applicable to this case. *Cf.* Walkovsky v. Carlton, 18 N.Y. 2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).

Under the circumstances presented by this case, the use upon which the claimed easement is based arose only after the division of title, and therefore the first element set out in the *Jacobson* case is lacking. The Government also argues that the defendant is estopped from denying the easement. If any estoppel lies in this case, it is clearly against the Government. The F.H.A. had its expert site planners view the parcel upon which the project was to be built. The F.H.A. had access to the various ordinances of the City of Peekskill. The F.H.A. had its architectural experts and site planners review and approve the entire project. At the time of final endorsement, the F.H.A. knew, or should have known, that extra parking was necessary. At that point, they could have insisted on a spreader agreement to cover the parcels on which it now seeks an easement. Indeed, in this case, one spreader agreement was consummated in order to supply some parking next to parcel B. In effect, the Government set in motion all of the circumstances which now present

a situation whereby the Government will have to seek an alternate solution to the parking problem of the Patricia Gardens project.

Judgment will be entered for the defendant. Settle order on notice.